1521:18-25, 1522:1-12) EXHIBIT 12. Parkinson did not describe collecting any evidence in his Grand Jury testimony. (GJ 111, 5-10; 114, 15-25) EXHIBIT 11, but he did at trial (Tr.1097:17-21) EXHIBIT 10. He also stated no massage oils were found in the room with the table, and that the 'dildo' was found in a different room. (Parkinson GJ 111:5–21), EXHIBIT 11 contradicting trial claims (Tr. 2888:5–9) EXHIBIT 10. Government witness Alessi testified that there were massage tables in every room (Tr.878:9-12) EXHIBIT 13 this fact, combined with the concealed Parkinson's Grand Jury testimony, would have allowed Petitioner to argue that the table produced at trial was not Epstein's massage table and should not have been admitted into evidence as Epstein's table thus denying the Prosecution the necessary interstate commerce element.

The Government's duplicity is compounded by their release pretrial of only handwritten notes of Parkinson's Grand Jury proceedings EXHIBIT 105 which conflicts with the evidence in the Transcript released in 2024 EXHIBIT 11. The Government knew of this suppression.

Petitioner was denied the opportunity to cross-examine and impeach the witness regarding the only evidence regarding the massage table which we know from the statements of Juror #50 was critical in establishing the required element of interstate commerce.

D.   Materiality and Prejudice

Parkinson's grand-jury statements, had they been disclosed, would have served to undermine the required "authentication" of the Massage Table the only exhibit adduced to fulfill the Government's required jurisdictional element of interstate commerce. Failure to disclose the statements to the Defense denied the opportunity for effective cross-examination and violated the Confrontation Clause, Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) and further denied the effective challenge to the Government's admission and authentication of that critical exhibit. Without Parkinson's alleged authentication, proof of interstate commerce failed and therefore Counts 5 and 6 should have failed. Further Juror #50 declared, "it was easy to prove guilt through the massage table". EXHIBIT 7 PARTNER IN CRIME Episode 3 24.45m. Such a statement by a critical juror demonstrates that had that massage table been properly excluded in the absence of lawful authentication and had Parkinson's testimony, at trial, been properly exposed as contradicting his Grand Jury testimony, there is a reasonable probability that there would have been a different result.

E. Conclusion

If the Government knowingly fails to disclose such exculpatory evidence, the standard is clear: "[I]f it can be shown that the Government deliberately suppressed evidence, a new trial is warranted if the evidence is merely material or favorable to the Petitioner." The Second Circuit has explained that exculpatory evidence is "material" if

"there is a reasonable probability that, had the evidence been disclosed to the Petitioner, the result of the proceeding would have been different," or if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." United States v. Orena, 145 F.3d 551, 557 (2d Cir. 1998) (quoting Kyles v. Whitley, 514 U.S. 419 (1995)). [4]. The Government must produce exculpatory evidence even if the Petitioner does not specifically request it. United States v. Agurs, 427 U.S. 97, 107 (1976). Suppression of Parkinson's grand-jury testimony constitutes a classic *Brady/Napue* violation warranting vacatur of Counts 5 and 6 or an evidentiary hearing. For purpose*s* of *Brady* the government is but a single entity, each member of which is charged with knowledge of the whole. *Brady* at page 87. Further the prosecutor has an affirmative duty to search for exculpatory material *Whitely* at 437-8.

POINT THREE

The Government Violated Due Process by Permitting Private Victims' Counsel to Act as De Facto Prosecutors and agents of the government

A.   Overview

Petitioner's conviction must be vacated because the Government impermissibly delegated investigative and prosecutorial functions to private plaintiff's attorneys—including but not limited to David Boies, Esq, Bradley Edwards Esq, Sigrid McCawley Attorney at Law and Jack Scarola, Esq[5]—who represented civil claimants with direct financial interests in the outcome of Petitioner's criminal case (hereafter "Plaintiff's Lawyers"). Their coordination with federal prosecutors compromised the neutrality of the

---

[4] United States v. Bravo, 808 F. Supp. 311, 319 (S.D.N.Y. 1992) (citing United States v. Kahn, 472 F.2d 272, 287 (2d Cir. 1973)). Knowledge of exculpatory evidence held by one Government agency can also be imputed to the Government as a whole. Bravo, 808 F. Supp. at 319 n.10 ("The Government is a single entity, each member of which is charged with the obligation of compliance.").

[5] In Netflix the lawyers stated they were all working in concert, in common interest (Netflix) EXHIBIT 27 (Dkt.247 at 8) EXHIBIT 113; Edwards and known and unknown Plaintiff's Lawyers met with the Government in 2016 to foment the investigation (Dkt.285-1) EXHIBIT 24. The Plaintiff's Lawyers were all working together; privilege was asserted between them and Complainants even when it did not appear that they represented the parties. Boies Schiller lawyer Sigrid McCawley asserted privilege for Scarola with Giuffre (see Bradley J Edwards and Paul G Cassell v Alan M Dershowitz. Case 1:5-cv-07433 LAP filed 1/9/24 at 205:19-20 . Scarola represented Edwards and Cassel in the same deposition (id at 5:1-2) EXHIBIT 63. The court denied the issuance of a subpoena on Boies Schiller as the coordination between Boies Schiller and the Government was "conclusory speculation' and the Government had made good faith representations as to its Brady obligations (Dkt 252 at 6) EXHIBIT 44. The Affidavits of Maurene Comey EXHIBIT 66 filed in Radar Online v. FBI Case 1:17-cv-03956-PGG reveals extensive material withheld from Petitioner under 'client attorney privilege' Dkt 38 page 24-25 10/29/21. (EXHIBIT 76) and Vaughn Index EXHIBIT 46. The lawyers participated in joint meetings, and with Miami Herald journalist Julie K Brown (hereinafter JKB) who writes about Edwards and McCawley meeting together to interview a 'new victim' March 2018 (JKB at 188 ).EXHIBIT 15 . The Plaintiff's Lawyers were the principal sources for JKB's Miami Herald series credited by USAO Berman with helping ignite the new investigation. (Uustal 32.16 43.30-44.17) EXHIBIT 26  and Dkt 204 at p65 fn 31, 66 EXHIBIT 20.

proceedings and created structural bias in violation of the Fifth Amendment's guarantee of due process U.S. Const. amend. V, Due Process Clause.

B.   Governing Law

The Supreme Court holds that the Government may not outsource prosecution to an interested private party. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 807 (1987) ("A prosecutor must be disinterested; participation by an interested party is a structural defect."); Berger v. United States, 295 U.S. 78, 88 (1935). The Second Circuit likewise recognizes that criminal cases must be conducted in the public interest, not as private retribution. United States v. Stein, 541 F.3d 130, 151 (2d Cir. 2008). Brady obligations extend to information known to "others acting on the Government's behalf." Kyles v. Whitley, 514 U.S. 419, 437–38 (1995); United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998). Thus, knowledge held by cooperating private attorneys is imputed to the prosecution.

C.   Factual Background

From 2016, law firms such as Boies Schiller Flexner LLP and Edwards Pottinger LLP maintained parallel civil suits against Epstein's estate while exchanging witness statements and strategic drafts with the U.S. Attorney's Office for the Southern District of New York ("SDNY"). Documents released in Radar Online v. FBI and from other sources reveal that these lawyers conspired and colluded with the Government and conducted the investigation for the Government. Attorney General Barr admitted in his recent hearing before Congress Oversight in 2025 that the investigation into Petitioner was not led by the FBI (Barr Transcript p.55 line 17) EXHIBIT 25

New reporting reveals that the Plaintiffs Lawyers (hereinafter " Plaintiffs Lawyers")

1. Confirmed they "instigated" the SDNY investigation. (ILP part 3 at 4.35m) EXHIBIT 31 and supplied thousands of pages of evidence. (Uustal at 37:07, 45:59) EXHIBIT 26.
2. Revealed the use of media was a strategy to foment the criminal investigation[6], and the Plaintiff's Lawyers were the principal sources for JKBs Miami Herald series, and book, suppling JKB with emails and other documents between the Government and Epstein's Defense. [7] Edwards's co-

---

[6] David Boies on camera stated that they had tried for years to involve the media in this case. Secrets of Prince Andrew Part 2 S1 E2 at 5.26m) EXHIBIT 114

[7] New evidence reveals Edwards and his coworker Fisten were primary sources for JKB. Edwards acquired thousands of documents between the Government and Epstein's Defense through the CVRA litigation (Uustal at 32.16 minutes and 43.30 -44.17 minutes) EXHIBIT 26. Fisten gave JKB work product information. Michael Fisten v Julie K Brown 01-20-0015-8776 EXHIBIT 28 at page 4 point 16. JKB writes about seeing non-public drafts of the NPA and " leaked " depositions at EXHIBIT 15). (JKB Perversion of Justice at 159,319. OPR and public mislead as Julie K Brown sources were not from public information

worker, Fisten furnished JKB with his work product, including information on complainants, the NPA and Alexander Acosta, (former US Attorney SDFL) (hereinafter (Acosta"). EXHIBIT 81. AG Barr acknowledged that the SDNY was also known for its "leaks". Barr Testimony before Congressional Committee on Oversight and Public Reform (Transcript 8/18/2025 at page 97 lines 8-9) EXHIBIT 25. The government admits the role of JKB and that of the Miami Herald reporting. Dkt 204 at 65 n 31, 66. EXHIBIT 20. JKB reveals working secretly with the Plaintiff's Lawyer's months before her series ran – meeting with them and 'a new victim' as Edwards describes they were working covertly with the SDNY at the same time[8]. JKB referenced multiple meetings Plaintiff's Lawyers had with SDNY over the years to incite the investigation (JKB at 282) EXHIBIT 15 .

3. Confirmed they worked "symbiotically' with the SDNY, shared and received information working as 'a team' for the 'redo' of the first investigation, helping the Government to not 'screw' up the investigation again as the Government 'had nothing'. (Uustal at 45.59) EXHIBIT 26

4. Discussed their role in developing evidence, gathering evidence, proposing victims, taking witness statements, and providing the prosecutorial strategy. Stating that the prosecution was going to use "the identical evidence", that the Plaintiff's Lawyers gave the road map the jury was going to see in the Petitioner's trial (Netflix "Ghislaine Maxwell Filthy Rich" Nov 25, 2022) EXHIBIT 27 (The identical victims and the evidence utilized against the Petitioner in civil defamation case in 2015. [9] ((Dkt.285 at 2-4.) EXHIBIT 24.)

---

(OPR at iii.) EXHIBIT 35. That Edwards and Fisten were the primary sources is cited in the interim award ruling case no. 01-20-0015-8776 dated 30th Dec. 2021 David Lichter arbitrator at page 2, EXHIBIT 28. and repeated in the Bulldog April 6 2022 at page 2 EXHIBIT 29. PRIVATE EYE SLAMS RULING

[8] New reporting suggests collaboration between JKB. Plaintiff's lawyers met with JKB as early as 2017 (JKB at 165. ) EXHIBIT 15. (Nobody's Girl at 314)EXHIBIT 45. JKB writes about a meeting held months before her series on Epstein ran in the Miami Herald held with Edwards, McCawley, Giuffre and "a new victim" March 2018. (JKB Perversion of Justice at 188) EXHIBIT 15. Edwards writes about meeting the "new victim" and reveals he was working covertly with the SDNY at the same time and happy to let JKB take credit for having started the new investigation into Epstein so his hands could stay clean. (Relentless Pursuit at 375-376 EXHIBIT 14), The Government Omnibus Opposition mislead the Court, it denied the Plaintiff's Lawyers played any role in instigating the investigation AUSA Berman noting the role of 'excellent investigative journalism and the role of JKB. (Dkt 204 at 65 n.31, 66) EXHIBIT 23.

[9] Petitioner pre trial argued that Plaintiff's Lawyers colluded with the Government, instigated the investigation and in 2016 engineered to have the Petitioner charged with perjury in conjunction with the Government. Dkt 3 ( Petitioner has no access to Dkt 3), Dkt 134 at 1-2, Dkt. 134 at 1-2, Dkt 140 at 1-2, Dkt 285 at 15-18) EXHIBITS 39,16. The Government obtained Boise Schiller's 'entire file', through a 'broad and unusual' subpoena granted by Chief Justice McMahon who found there was no evidence of collusion between Boies Schiller and the Government, and that she was not facing a 'Chemical Bank situation' where material was forwarded to the Government to foment and investigation. (Dkt. 311-4 at 21) EXHIBIT 43.

       The above reveals a pattern of behavior that begins in 2011 when Plaintiff's Lawyers attorney Edwards shared confidential and sealed documents obtained from civil suits with AUSA Villafana the USAO for SDFL. 3501.226.072 EXHIBIT 125

5. The lawyers proposed civil suits to acquire evidence for a criminal trial (ILP part III at 46.50 minutes EXHIBIT 19. The Plaintiff's Lawyers confirmed the civil suits were the reason the Petitioner is in jail. (Objections Podcase Episode 72 at 9:15 m 9 EXHIBIT 88

6. Plaintiff's Lawyers confirmed that they attended the criminal trial and, participated in investigating evidence litigated at trial, and during trial (Uustal 1hr25m) EXHIBIT 26 (Tr. 2885; lines 1-14) EXHIBIT 30.

7. Discussed the financial nexus between the parties and discussed divvying up Epstein's assets (to include 2 private islands) and holding the Estate hostage between the lawyers and the Government to their mutual benefit. (ILP. part 2, intro) EXHIBIT 19 (Uustal 1hr 10.32h). EXHIBIT 26.

8. Discussed personal motives to seek to reopen the investigation; a new investigation would provide insurance in the face of losing a civil suit against Epstein.(ILP part 3, at 12.02m) EXHIBIT 19. Guiffre testified she was contacted because of the same Epstein civil suit (Case 1:15-cv-07433-LAP doc 1335-3 filed 1/9/24 at p. 133:13-20. EXHIBIT 21 Guiffre at the same time was invited to join the The Crime Victims' Rights Act, 18 U.S.C. § 3771, case (hereinafter "CVRA") CVRA case (BE Book Relentless Pursuit at 170) EXHIBIT 14. The investigation was fomented to promote the CVRA case (Docket 285-3 at page 3) EXHIBIT 20 Documents from Giuffre' CVRA given to the Government in 2016 (Docket 285-3 at 3 EXHIBIT 20 ) Doc 285-3 page 6. A Kramer observes that she felt it would help the CVRA case if the SDNY opened a criminal case. Dkt 285-2 at page 6. EXHIBIT 22

---

The Government argued to Judge Nathan that Boies Schiller played no role in the investigation (Dkt.204 at 129) EXHIBIT 20 and the Petitioner lacked evidence to support the allegations; the Government was aware of its obligations under Brady and it made good faith representations that it would meet its Brady obligations; discovery and an evidentiary hearing should not be granted. (Dkt.204 at 115-116) EXHIBIT 20; allegations of Government misconduct were baseless. The new reporting reveals that the Government deceived 2 judges about its relationship with Plaintiff's Lawyers and had the Petitioner had the new evidence an evidentiary hearing would have been held and discovery ordered. The Perjury counts were based upon depositions in the civil claim Giuffre v Maxwell, 1:15-cv-07433 (S.D.N.Y.) which revealed the civil plaintiff's lawyers plan with the Government all along to add perjury counts to the criminal proceeding which is now supported by the newly released evidence set forth above in this document sections 1-11. See also EXHIBIT 18 at p 5 Kramer typed notes where she was considering perjury charges. These notes were written 6 years after events and with no supporting affidavit, nor was she a witness at trial. Petitioner was denied a subpoena by the Court on Plaintiff's Lawyers because 'the Government had made good faith representation that Government was cognizant of its Brady obligations'. Doc 252 page 6. EXHIBIT 44

9. The Plaintiff's Lawyers told the SDNY in 2016 that the SDFL wanted to pursue a new investigation of Epstein Docket 285-1 at page 5. EXHIBIT 16. (an important factor in reopening of investigation. Dkt 285 EXHIBIT 16
10. Discussed leveraging the potential criminal proceedings to reach Confidential settlements with 25 men [10] ( ILP PART III at 12.02 minutes.) EXHIBIT 19 and the criminal case for settlements against various national and international Banks for attorney's Fees. (Reuters Jeffrey Epstein victims sue FBI, allege coverup (Feb 14 2024)  EXHIBIT 32). No settlements with the 25 various men were ever disclosed to Petitioner.
11. Wexner was accused of participating and witnessing abuse ( See Case 1:15-cv-07433-LAP Doc 1335-3 filed 1/9/24 at 20:13-15) EXHIBIT 21 , no settlement with Wexner was revealed EXHIBIT 21.  Press reports reveal other potential men including Leon Black who agreed to pay $62.5 Million to Settle Epstein Related Claims and the others that the Plaintiff's Lawyers negotiated (per the press reports). Similarly, no discovery on Leon Black was provided to Petitioner. The New York Times 7/21/2023 (EXHIBIT 32).

Points 1-11 serve to contradict the Government who informed the Courts that Boies Schiller played no role in fomenting the investigation. (Dkt. 204 at 71, 91-92) EXHIBIT 20. The Government confirmed that it had extensive documents it withheld under attorney client privilege, work product and privacy which are normally used in civil cases which improperly shielded the fact that Plaintiff's Lawyers were acting as agents of the Government. Radar Online Doc 38 pages 23-4 EXHIBIT 76.

D. Witness Tampering

New Evidence reveals that Plaintiff's Lawyers were coordinating working with the journalists and the Government to create the false narrative that Petitioner found and paid the complainants for sex. The Plaintiff's Lawyers then paid the complainants to testify EXHIBIT 49.

1. Witness Carolyn Adriano was coerced into giving evidence by lawyers to support the Governments case in return for money (Affidavit of Carolyn's Mother Dorothy Groenhert paragraph 25 EXHIBIT 49). Carolyn Adriano revealed that the FBI directed her testimony at trial telling her what she was allowed to say. (Lasting Harm p. 104) EXHIBIT 3.
2. Churcher reveals in Daily Mail 2025 that 'a prosecutor' reached out to her in 2011 (Churcher). AUSA Villafana held a meeting with Edwards and 'a writer' EXHIBIT 119 (3501.226.072 at 1)  AUSA Villafana states she invited a writer

---

[10] Plaintiff's Lawyer Edwards stood at the foot of the Capital 9/3/25 and teased the media about "a list of men" – his clients and other parties discussing 'creating' a list of men, all the while knowing there was a list of at least 25 men with whom there were confidential private settlements all the while misleading the media, the public and US Congress with this misdirection regarding "a list'.

      to join in her meeting. EXHIBIT 125. On information and belief, the 'writer' was Sharon Churcher (see footnote 11). Non testifying Witness Giuffre reveals that journalist Sharon Churcher[11] provided information and supplied 40 photographs for Giuffre's 302 interviews with the FBI (See Giuffre Nobody's girl at 133 ) EXHIBIT 45, See Vaughn Index PAGE 130, 131,133, 135, EXHIBIT 46).

3. Plaintiff's lawyers contacted Churcher paid Giuffre additional money for information on Witness Jane . (On information and belief Handwritten notes relating to 3501.226-040,42,43,44 (to which Petitioner no longer has access) EXHIBIT 56. Edwards wrote that Jane " had to be forced" to go public ( BE Book Relentless Pursuit p. 272) at EXHIBIT 14.  Daily Mail published an article on Jane on March 7th 2011 EXHIBIT 115 Jane testified at trial she was "blackmailed" (Tr.607:11-12 ) EXHIBIT 118.  Subsequently Edwards used Jane's story in the CVRA (Radar On Line Sex Slaves lawyers want well know actress to testify " February 2, 2015 l EXHIBIT 117. By preponderance of the evidence Edwards sought to use public pressure on Jane to persuade her to cooperate and support Guiffre in her civil suit which became the criminal case against Petitioner.

4. On March 9th 2011 and March 17, 2011 (3501.226.030 EXHIBIT 126) Edwards, a writer and AUSA Villafana met. Churcher appears to have participated in Guiffre's FBI meeting in 2011 (Document 3501.226-022) EXHIBIT 56. Plaintiff's lawyers, similarly, participated, on information and belief, Attorney Edwards and other unknown lawyers, and Giuffre's husband was present at the FBI interview ( Nobody's Girl p 249) EXHIBIT 45. None of the parties were revealed to have participated in the various meetings in Petitioner's discovery in her criminal trial. None of the parties who supplied information to the Government represented Guiffre at the time and the information as such is therefore not privileged information and it should have been disclosed to Petitioner and Petitioner's lawyers in her criminal proceedings.  Guiffre states she signed a contract with Edwards in 2013. (Nobody's Girl p. 258) EXHIBIT 45. Per the Vaughan index, the 3rd party who supplied information to the Government on 9th March 2011 on information and belief was either Churcher or Edwards or both in collusion.

---

[11] Edwards introduced Giuffre to Churcher. Exhibit 15 p. 170. Churcher met with Giuffre in Australia for approximately 6 weeks. "a Prosecutors reached out to Churcher while she was in Australia (Daily Mail 2025 EXHIBIT 119.). A 'writer' participated with Edwards in an FBI meeting with Villafana 2011. EXHIBIT 125, 3501-226.072. On information and belief the writer was Churcher. Churcher and the lawyers participated in Giuffre's subsequent 302 interview in 2011 3501.226.030 p. 7 EXHIBIT 126  and that information was used in the CVRA and related civil suits and criminal prosecution. Neither Churcher nor Edwards involvement in Giuffre's interviews with the Government were revealed to the Petitioner. Edwards introduced Giuffre to Churcher (Relentless Pursuit at 170 EXHIBIT 15)